UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.: 17-23333-CIV-MARTINEZ-OTAZO-REYES

JANE DOE

    Plaintiff,

vs.

JOHN ROE

    Defendant.
_____/

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff JANE DOE hereby alleges and complaints as follows:

## NATURE OF ACTION

1. This is a civil action brought by Plaintiff JANE DOE ("Plaintiff or DOE") against Defendant JOHN ROE ("Defendant" or "ROE") based upon the following:

    a. Fraud under Florida law,

    b. Promissory estoppel under Florida law,

    c. Breach of contract under Florida law, and

    d. Unjust Enrichment under Florida law.

## THE PARTIES

2. Plaintiff JANE DOE ("Plaintiff" or "DOE") is an individual residing in the State of California.

3. Defendant JOHN ROE ("Defendant" or "ROE") is an individual residing in the State of Florida in Miami-Dade County. The claims brought in this lawsuit were originally the subject of a lawsuit in the State of California, County of Los Angeles titled *Sonja L. v. Francesco*

*G*. Case No. BC640503 (the "California Suit").  Defendant Francesco G. in the California Suit is Defendant JOHN ROE in this matter. Defendant ROE responded to the California Suit and DOE and ROE agreed that the suit would be refiled in this district.

4. Plaintiff and Defendant have been named anonymously for the purpose of protecting their confidentiality, as well as the confidentiality of their minor child, at the center of this dispute.  Additionally, the parties have been named anonymously pursuant to an agreement of confidentiality between the parties.

## JURISDICTION AND VENUE

5. This action arises under the common law of the State of Florida. As set forth below, this Court has original jurisdiction over the claims pursuant to 28 U.S.C. § 1332.

6. Plaintiff is a citizen of the state of California and Defendant is a citizen of the State of Florida. This Court has diversity jurisdiction over the parties pursuant to 28 U.S.C. § 1332 because Plaintiff is a resident of a different state than Defendant and the amount in controversy exceeds $75,000.

7. The Court has personal jurisdiction over Defendant, who is domiciled in Florida, and, by his own admission, has extensive contacts with, and conducts business within, the state of Florida.

8. Venue in this district is proper pursuant to an August 2, 2017 agreement between the Plaintiff and Defendant.  In that agreement, the parties agreed to dismiss the California Suit and refile the claims in this district.

9. Further, venue in this district is proper because Defendant admits to residing in this judicial district.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS
### Child X is Born

10. Plaintiff and Defendant are both well-known public figures. Plaintiff is a well-known television personality and former model. Defendant is a wealthy and prominent business executive.

11. Plaintiff and Defendant first met in 1993, and, shortly thereafter, commenced what would become a nine-year relationship. During the entirety of their relationship, and still to this day, Defendant was married to another woman.

12. In order to protect Defendant's personal and professional life and image, Plaintiff and Defendant hid their long-term relationship. Defendant insisted upon keeping their relationship secret.

13. Despite the clandestine nature of their relationship, Plaintiff and Defendant's relationship was loving, trusting, and long-lasting. Defendant was quite generous to Plaintiff.

14. During their relationship, Plaintiff and Defendant had numerous conversations in which they discussed their mutual desire to have children. Defendant was always aware of Plaintiff's desire to have children with him and, in fact, agreed to father a child with Plaintiff.

15. In late 2001, Plaintiff became pregnant. In 2002, Plaintiff gave birth to Child X. Although Defendant admits and acknowledges that he is Child X's father, from the moment of Child X's birth, Defendant demanded that Plaintiff keep his parentage of Child X a secret.

16. In late 2002, a public scandal erupted which threatened Defendant's business and reputation. Defendant came under intense public scrutiny for his business dealings. In order to preserve, rescue, and save his reputation, Defendant wanted to ensure that Child X's paternity remained confidential. To that end, in 2002, Defendant used his wealth, power, and professional stature to pressure and intimidate Plaintiff into an agreement whereby Defendant would provide

for Child X and Plaintiff would not reveal the child's paternity – not even to Child X (the "Agreement").

17. As part of the Agreement, Defendant was obligated – and expressly agreed – to pay child support to Child X in the form of a trust that would generate monthly support payments of $20,000, along with a principal investment that would go to the child on the child's 27th birthday. In addition, Defendant agreed to pay Plaintiff over $1,000,000 for her agreement to raise Child X on her own and maintain the secrecy of Defendant's paternity.

18. Plaintiff vigorously adhered to her side of the bargain, as she maintained the secrecy of Defendant's identity, not only to the world, but also to their child.

19. Child X has been raised, single-handedly, by Plaintiff, at great personal cost. Child X is immensely talented, excels in school and activities, including singing, acting, writing, and other creative arts. Nevertheless, Child X has grown up thinking she does not have a father, while the children born to Defendant in other marriages have lived lives of luxury. Plaintiff has struggled to provide their child with a roof over their child's head and appropriate lessons for Child X's artistic talents.

### **Defendant Repeats and Restates his Promises From 2002 Through 2014**

20. After Plaintiff and Defendant entered into the 2002 Agreement and continuing through 2014 – indeed multiple times each year during this period – Defendant, both personally, and through his agent and attorney, repeated, ratified, restated, and independently agreed to the same terms agreed to in 2012: that he would create a trust generating monthly support payments of $20,000, along with a principal investment that would go to the child on the child's 27th birthday, as well as an additional $1,000,000, in exchange for Plaintiff's continued agreement to raise Child X on her own and maintain the secrecy of Defendant's paternity.

21.     Plaintiff had no reason to suspect that Defendant never intended to follow through on this Agreement, which was repeated, restated, reaffirmed, ratified, and independently made multiple times each year between 2002 through 2014.  These promises were made by Defendant, both personally, and through his personal agent and attorney, and, moreover, Defendant (and his agents) repeatedly acknowledged that Plaintiff and Child X "would be taken care of."  Defendant, and his attorney and agent, reinforced this Agreement with various threats, including the threat that Plaintiff would lose custody of Child X, as well as the loss of consideration promised by Defendant in exchange for the Agreement.

### **Defendant Pressures Plaintiff to Accept Less Money and Pushes Back the Date for His Performance Under the 2002 Agreement**

22.     Beginning in 2014, Defendant used his money and power to intimidate and threaten Plaintiff to accept progressively less and less money than required under the Agreement.

23.     Defendant threatened that if Plaintiff did not accept less money than she was entitled to under the Agreement, then she would get nothing and he would sue for sole custody of Child X, taking Child X away from Plaintiff.  Defendant made additional threats that Plaintiff believed to be threats to her personal safety.  Plaintiff was afraid not only that she would lose custody of Child X, but that her personal safety was also at risk.

24.     Defendant insisted that his required performance under the Agreement be pushed back. With each insistence, Defendant assured Plaintiff that he would perform as required under the Agreement and again threatened her as described above.

25.     With each separate instance, Defendant threatened and coerced Plaintiff to accept less money and allow Defendant to delay his performance even later.

26.     Each time, Defendant represented to Plaintiff that if she acquiesced to his new demands, he would perform under the Agreement and pay the compensation required therein.

## COUNT I
### (Fraud)

27. Plaintiff repeats and realleges each and every paragraph above as if set forth herein.

28. Defendant made material promises to Plaintiff repeatedly, from 2002 through 2014. Those promises included the agreement to pay child support for Child X in the form of a trust that would generate monthly support payments of $20,000, along with a principal investment that would go to the child on the child's 27th birthday. In addition, Defendant agreed to pay Plaintiff over $1,000,000 for her agreement to raise Child X on her own and maintain the secrecy of Defendant's paternity. Subsequent to 2014, Defendant has made additional promises and representations of support, and other monetary compensation, to Plaintiff and for Child X.

29. Defendant made these promises and representations throughout the period, multiple times each year, through oral statements made personally by Defendant to Plaintiff, as well as through verbal statements made by Defendant's agents acting on his behalf.

30. These promises and/or representations were false when made by Defendant (and agents acting on Defendant's behalf), and were knowingly false when made. Defendant never intended to follow through on this Agreement, nor did Defendant ever intend to take care of Plaintiff and Child X as repeatedly promised throughout this period.

31. Defendant made the above promises, and each of them, without any intention to perform thereupon and with the intent to defraud and induce Plaintiff to reply upon the promises. Defendant knew that Plaintiff was entitled to significant compensation under the Agreement and that Plaintiff could petition a court of law for child support and thus knowingly induced Plaintiff to abandon such relief.

32. The purpose of making these repeated promises and Agreements was to induce Plaintiff's reliance, including to induce Plaintiff to keep the identify of Defendant secret, as well as to induce Plaintiff to refrain from enforcing the Agreement, among other things.

33. Plaintiff was not fully aware of the falsity of Defendant's promise until late 2014 when the totality of Defendant's actions revealed that Defendant never intended to perform the promises made to Plaintiff.

34. Plaintiff justifiably relied on Defendant's false promises in keeping the paternity of Child X secret.

35. As a result of Defendant's false promises and representations, Plaintiff was induced to keep his identity secret – even to her own child – and to refrain from enforcing the Agreement, among other things.

36. As a direct and proximate result of Defendant's conduct, Plaintiff has been damaged in an amount to be proven at trial, which Plaintiff is informed and believes is well over $75,000.

37. Further, Defendant's conduct was despicable, malicious, intentional, and outrageous and constituted willful and wanton disregard for the rights of Plaintiff in that Defendant threatened Plaintiff's parental rights and personal safety as a part of his scheme to defraud Plaintiff. Such conduct was specifically directed at Plaintiff, and as such warrants an award of punitive damages.

## COUNT II
### (Promissory Estoppel)

38. Plaintiff repeats and realleges each and every paragraph above as if set forth herein.

39. Defendant made material promises to Plaintiff repeatedly, from 2002 through 2014. Those promises included the agreement to pay child support for Child X in the form of a trust that

would generate monthly support payments of $20,000, along with a principal investment that would go to the child on the child's 27th birthday. In addition, Defendant agreed to pay Plaintiff over $1,000,000 for her agreement to raise Child X on her own and maintain the secrecy of Defendant's paternity. Subsequent to 2014, Defendant has made additional promises and representations of support, and other monetary compensation, to Plaintiff and for Child X.

40. Plaintiff reasonably and foreseeably relied on Defendant's repeated promises. Prior to Child X's birth, Plaintiff and Defendant were engaged in a nine-year long relationship and had a relationship of trust and confidence. This relationship of trust and confidence continued after Child X's birth, as they were both the parents of this child.

41. Plaintiff relied on Defendant's repeated promises to her detriment. In reliance on Defendant's promises, Plaintiff, among other things, maintained the secrecy of Defendant's identify, refrained from pursuing her rights under the Agreement, and other rights, and exhausted her resources to pay for Child X.

42. As alleged herein, Defendant has reneged on his promises to provide support for Child X, has not set up the trust for Child X set forth above, and has not paid Plaintiff the promised compensation.

43. Defendant is estopped from denying his obligations to provide for Child X through the trust described herein and his obligations to compensate Plaintiff as promised. It is necessary to enforce Defendant's promises as alleged herein to avoid injustice to Plaintiff.

44. As a direct and proximate result of the foregoing acts of Defendant, and Plaintiff's reliance thereon, Plaintiff has suffered general, consequential, and incidental damages in an amount to be proven at trial, which Plaintiff is informed and believes is well over $75,000.

## COUNT III
### (Breach of Contract)

45. Plaintiff repeats and realleges each and every paragraph above as if set forth herein.

46. Plaintiff and Defendant repeatedly entered into the Agreement which is a valid and enforceable contract. Under the Agreement, Defendant would provide support for Child X in the form of a trust that would generate monthly child support payments of $20,000 with the principal being available for Child X on the child's 27th birthday, and Plaintiff would be paid a sum of over $1,000,000. As consideration, Plaintiff would raise Child X and keep the child's paternity secret.

47. Plaintiff has performed her obligations under the Agreement and has raised Child X and kept Defendant's paternity secret.

48. Defendant breached the Agreement in late 2014 when he communicated to Plaintiff that he would not be compensating her for raising Child X and in exchange for keeping Child X's paternity secret as required by the 2002 Agreement.

49. As a direct and proximate result of Defendant's conduct, Plaintiff has been damaged in an amount to be proven at trial, which Plaintiff is informed and believes is well over $75,000.

## COUNT IV
### (Unjust Enrichment)

50. Plaintiff repeats and realleges each and every paragraph above as if set forth herein.

51. As a result of the actions described herein, Defendant was allowed to receive the benefits of Plaintiff raising Child X and keeping his paternity a secret without providing a corresponding benefit to Plaintiff.

52. Defendant obtained these benefits based on promises that have not been fulfilled, enriching Defendant in a manner making it unjust for him to receive such benefit without compensating Plaintiff in the appropriate amount.

53. By reason of the facts alleged herein, Defendant has been unjustly enriched at Plaintiff's expense in that Defendant has received substantial benefits from Plaintiff without compensating Plaintiff.

54. Defendant has been unjustly enriched in an amount to be proved at trial, which Plaintiff is informed and believes is well over $75,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff JANE DOE prays for relief as follows:

That the Court enter judgment for Plaintiff JANE DOE and against Defendant JOHN ROE on each of the above counts.

On Her First Count:

1. For compensatory and consequential damages in an amount according to proof at trial.

2. For punitive damages.

On Her Second Count:

3. For compensatory and consequential damages in an amount according to proof at trial.

On Her Third Count:

4. For compensatory and consequential damages in an amount according to proof at trial.

On Her Fourth Count:

5.     For compensatory and consequential damages in an amount according to proof at trial.

On All Of Her Counts:

6.     For attorney's fees and costs where authorized.

7.     For such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury in this action.

Dated: October 26, 2017         Respectfully submitted,

BECKER & POLIAKOFF, P.A.
*Attorneys for Plaintiff*
1 E. Broward Blvd., Suite 1800
Ft. Lauderdale, FL 33301
Tel: 954-985-4133
Fax: 954-985-4199
dwallach@bplegal.com

By:    /s Daniel L. Wallach
Daniel L. Wallach, Esq.
Florida Bar No. 540277

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by the Court's CM/ECF system on October 26, 2017 on all counsel or parties of record.

/s Daniel L. Wallach
Daniel L. Wallach, Esq.
Florida Bar No. 540277