UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case Number: 17-23333-CIV-MARTINEZ-OTAZO-REYES

JANE DOE,
    Plaintiff,

vs.

JOHN ROE,
    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** is before the Court on Defendant John Roe's ("Defendant") Motion for Summary Judgment (ECF No. 151). The Court has reviewed Defendant's Motion, Plaintiff Jane Doe's ("Plaintiff") Response in Opposition (ECF No. 158), the relevant record, and is otherwise fully advised in the premises. After careful consideration, the Court **GRANTS** Defendant's Motion for Summary Judgment as to all claims.

### I.  BACKGROUND

This case arises out of an alleged oral agreement entered into by the parties in 2002, shortly after their daughter was born ("Child X"). Prior to Child X's birth, Plaintiff and Defendant maintained a nine-year relationship while Defendant was married to another woman. (2d Am. Compl. ¶ 11, ECF No. 127). According to Plaintiff, "from the moment of Child X's birth, Defendant demanded that Plaintiff keep his parentage of Child X confidential." (2d Am. Compl. ¶ 16). As a result, she alleges that they entered into an oral agreement whereby Defendant would:

> (1) create a trust, the principal of which would be paid to Child X when she was 27, and prior to that would yield $20,000 a month [] and (2) pay Plaintiff one million dollars in exchange for both her compliance with his demand that she refrain from making it publicly known that she was Child X's father as well as in exchange for her agreement to raise Child X alone.

1

(Pl.'s Opp., at 1, ECF No. 158).

In her Second Amended Complaint, Plaintiff alleges five counts against Defendant: (I) Fraud in the Inducement; (II) Fraud; (III) Promissory Estoppel; (IV) Breach of Contract; and (V) Unjust Enrichment. (2d Am. Compl.). Defendant has moved for summary judgment on all counts. (Mot. Summ. J., ECF No. 151).

## II. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56(a), "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there will be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue is genuine if there is sufficient evidence such that a reasonable jury could return a verdict for either party. *Id.* at 248. Similarly, an issue is material if it may affect the outcome of the suit under governing law. *Id.*

The moving party bears the burden of showing the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant, thus, must point out to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325. After the movant has met its burden under Rule 56(c), the burden of production shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "may not rely merely on allegations or denials in its own pleadings," but instead must come forward with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 587.

### III. ANALYSIS

Defendant moves for summary judgment on Plaintiff's claim for a breach of an alleged oral contract between the parties, as well as Plaintiff's claims for fraud, fraud in the inducement, and promissory estoppel. He argues, *inter alia*, that these claims are barred by the statute of frauds. (Mot. Summ. J., at 3–6, 14–15, 17).[1] Even assuming, without deciding the matter, that a contract between the parties exists,[2] the Court agrees that the alleged oral agreement falls under the statute of frauds, thereby barring Plaintiff's claims. As to Plaintiff's claim for unjust enrichment, the Court finds that it similarly fails because Plaintiff has not conferred a benefit upon Defendant.

#### A. Applicable Law

As a threshold matter, the Court must decide whether New York or Florida law applies. In diversity actions such as this one, the Court is required to apply the substantive law of the forum state, including its conflict-of-law rules. *Klaxon Co. v. Stentor Elect. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In Florida, a "true conflict" of laws exists when "two or more states have a legitimate interest in a particular set of facts in litigation and the laws of those states differ or would produce a different result." *Walker v. Paradise Hotel, Ltd.*, No. 01–3564, 2003 WL 21361662, *2–3 (S.D. Fla. April 25, 2003). On the other hand, a "false conflict" exists where the laws of the interested jurisdictions would produce the same outcome. *Pycsa Panama, S.A. v. Tensar Earth Technologies*, 625 F. Supp. 2d 1198, 1218 (S.D.

---

[1] Plaintiff also moves for summary judgment on the basis that (1) the claims are barred by the applicable statute of limitations; (2) the claims are barred by the statute of repose; (3) the claims are barred by collateral estoppel; (4) the agreement is too indefinite to enforce; and (5) no reasonable jury could find by a preponderance of the evidence that Plaintiff is entitled to a verdict on any of her claims. (Mot. Summ. J., at 2). Because the Court finds that the statute of frauds unequivocally bars this action, and that Plaintiff's unjust enrichment claim has no merit, it does not find it necessary to address Defendant's other arguments.

[2] The parties dispute the existence of a contract between them. Given that Plaintiff's claims are barred by the statute of frauds, as explained *infra*, the Court need not decide whether a contract in fact existed.

Fla. 2008) (citing *Tune v. Philip Morris, Inc.*, 766 So. 2d 350, 352 (Fla. 2d DCA 2000)). When a "false conflict" exists, the law of the forum state—Florida—applies. *Cavic v. Grand Bahama Dev. Co.*, 701 F.2d 879, 882 (11th Cir. 1983) ("[U]nder applicable conflict-of-laws principles the law of the forum would govern the substantive issues due to the absence of facts justifying the application of the law of some other jurisdiction.").

Plaintiff asserts for the first time in her response to the Motion that New York law governs her claims. (Pl.'s Opp., at 2–4). She claims that the alleged "agreement, promises, and misrepresentations that form the basis of her complaint occurred in New York." (Pl.'s Opp., at 2). Notwithstanding, and contrary to Plaintiff's assertions, regardless of whether Florida or New York law is applied to the facts of her claims, the Court ultimately concludes that the outcome of this case is the same, creating a "false conflict." Accordingly, the Court will apply Florida law. *See Cavic*, 701 F.2d at 882.

### B. Breach of Contract

Moving on to the merits of this action, the Court finds that the statute of frauds bars Plaintiff's claim for breach of contract. The statute of frauds sets forth that "no action shall be brought . . . upon any agreement that is not to be performed within the space of 1 year from the making thereof" and is not in writing. Fla. Stat. § 725.01; *see also* N.Y. Gen. Obslig. Law § 5-701(a) (In New York, the statute of frauds requires that an oral agreement be memorialized by a writing if that agreement cannot "be performed within one year from the making thereof."). The statute is "strictly construed to prevent the fraud it was designed to correct, and [] courts should be reluctant to take cases from its protection." *LynkUs Commc'ns, Inc. v. WebMD Corp.*, 965 So. 2d 1161, 1165 (Fla. 2d DCA 2007) (citing *Yates v. Ball*, 181 So. 341, 344 (1938)); *see also Pickering v. Am. Express Travel Related Services Co., Inc.*, No. 98 CIV. 8998 JFK, 1999 WL 1225246, at

4

\*3 (S.D.N.Y. Dec. 21, 1999) (there is a "strong public policy favoring application of the Statute of Frauds.").

According to Plaintiff, the parties entered into an oral agreement in 2002, that Defendant would,

> (1) create a trust, the principal of which would be paid to Child X when she was 27, and prior to that would yield $20,000 a month (a trust that was viewed as an alternative form of inheritance), and (2) pay Plaintiff one million dollars in exchange for both her compliance with his demand that she refrain from making it publicly known that he was Child X's father as well as in exchange for her agreement to raise Child X alone.

(Pl.'s Opp., at 1; *see* 2d Am. Compl. ¶¶ 28–29).

It becomes evident by the terms of the alleged oral agreement that the complete agreement cannot possibly be performed within one year of its making. Plaintiff's primary obligation under the agreement, namely, that she maintain Child X's paternity a secret, extended in perpetuity.[3] (*See* Sanctions Hearing Trans., at 114: 1–5 (Plaintiff testified that she was required to keep Defendant's identity a secret for the rest of her life)). Plaintiff was also required to "raise Child X on her own." (2d Am. Compl. ¶ 29). This obligation extended, at the very least, for 18 years, until Child X reached the age of majority. Finally, Defendant's obligations pursuant to the alleged agreement were also impossible of being performed within one year of the contract's making. The agreement called for Defendant to create a trust for Child X, and make monthly payments of $20,000, until Child X was 27 years old, at which time the principal of the trust was to be paid to her. (*See* 2d Am. Compl. ¶¶ 28–29; Pl.'s Opp., at 1). Under those terms, Defendant's obligations extended for a period of 27 years. As such, "it is clear from the object to be accomplished . . . and the surrounding circumstances that the agreement alleged by [Plaintiff] was intended to extend for

---

[3] Surely, Plaintiff must not be attempting to bifurcate the agreement and asserting that her silence was only tied to the one million dollars Defendant allegedly promised, for if that were the case, there would be no consideration for the agreement requiring Defendant to create a trust for Child X.

a longer period than a year." *See LynkUs Commc'ns, Inc.*, 965 So. 2d at 1165. Therefore, the alleged oral agreement is barred by the statute of frauds.

### C. Fraud and Fraud in the Inducement[4]

The statute of frauds also bars Plaintiff's claims for fraud and fraud in the inducement. The statute of frauds bars *any* action "upon any agreement that is not to be performed within the space of 1 year from the making thereof" and is not in writing. Fla. Stat. § 725.01. As aptly pointed by Defendant, "Plaintiff cannot avoid the statute of frauds simply by couching her claim as a fraud[.]" (Mot. Summ. J., at 4, 15). Plaintiff cannot circumvent the bar imposed by the statute of frauds "merely by claiming that an oral agreement was actually a fraudulently made promise to perform." *Eclipse Medical, Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1345 (S.D. Fla. 1999); *Ostman v. Lawn*, 305 So. 2d 871 (Fla. 3d DCA 1974) ("The Florida rule is that the statute of frauds may not be avoided by a suit for fraud based on oral representations."); *see also Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006) ("[G]eneral allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support [a fraud] claim.").

In her Second Amended Complaint, Plaintiff alleges that Defendant made false promises and misrepresentations "in order to induce her into accepting the Agreement[.]" (2d Am. Compl. ¶ 28). These promises included, but were not limited to: (1) creating a trust "that would generate $20,000 in support payments for Child X, the principal of which Child X would receive on her 27th birthday[;]" and (2) "that if Plaintiff kept Child X's paternity confidential and raised Child X

---

[4] Although the law in New York is different as applied to Plaintiff's claims for Fraud and Fraud in the Inducement, it yields the same outcome. As to Plaintiff's fraud claims, "general allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support [a fraud] claim." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006) (citing *New York Univ. v. Cont'l Ins. Co.*, 87 NY2d 308, 318 (1995)). Thus, Plaintiff's claims that Defendant made promises to her which he never intended to keep are insufficient to support her fraud claims.

on her own that Defendant would pay her $1,000,000." (2d Am. Compl., ¶¶ 28–29). These are the exact terms that form part of the alleged agreement. Put simply, Plaintiff is alleging that the agreement itself "was actually a fraudulently made promise to perform." *See Eclipse Medical, Inc.*, 262 F. Supp. at 1345. This, she cannot do. Plaintiff cannot reformulate her oral contract as a misrepresentation for the purpose of avoiding the bar imposed by the statute of frauds. *Ferrell Law, P.A. v. Crescent Miami Center, LLC*, 313 Fed. Appx. 182, 185 (11th Cir. 2008) (citing *Ostman*, 305 So. 2d at 871)). Accordingly, Plaintiff's fraud claims are also barred by the statute of frauds.

### D. Promissory Estoppel

Likewise, the statute of frauds bars Plaintiff's claim for promissory estoppel. Florida law is clear that promissory estoppel is not an exception to the statute of frauds.[5] *See Tanenbaum v. Biscayne Osteopathic Hosp., Inc.*, 190 So. 2d 777 (Fla. 1966); *Johnson v. Univ. Health Servs., Inc.*, 161 F.3d 1334, 1340 (11th Cir. 1998) ("Promises that do not conform to the statute of frauds, however, will often be equally unenforceable under a promissory estoppel theory."). Plaintiff cannot use promissory estoppel to bypass the statute of frauds. *DK Arena, Inc. v. EB Acquisitions I, LLC*, 112 So. 3d 85, 97 (Fla. 2013) (citing *Tanenbaum*, 190 So. 2d at 779). Thus, the Court

---

[5] In this regard, Florida and New York law differs, but the outcome is the same. Under New York law, the doctrine of promissory estoppel may apply notwithstanding the statute of frauds, only in cases where application of the statute of frauds would produce an unconscionable result. *Four Star Capital Corp. v. Nynex Corp.*, 183 F.R.D. 91, 103 (S.D.N.Y. 1997) (citing *Kubin*, 801 F. Supp. at 1122)). Here, the application of the statute of frauds does not necessarily produce an unconscionable result "sufficiently egregious to defeat the operation of the statute[.]" *See Four Star Cap. Corp.*, 183 F.R.D. at 103 (citing *Carvel Corp. v. Nicolini*, 535 NYS2d 379, 381 (2d Dept. 1988)). Defendant has been providing at least $10,000 monthly in child support for Child X throughout Child X's lifetime, in addition to payment of other bills, such as Child X's private school which totals nearly $36,000 a year. (Jane Doe Depo., at 281:4–282:3, ECF No. 98-1; *see also* Jane Doe Decl. ¶¶ 22, 24). The Court notes that it does not intend to diminish Plaintiff's emotional distress in maintaining the paternity of her child a secret to the public. However, Defendant has continued to provide for Child X, and Plaintiff has already revealed the identity of Child X's father to at least a dozen individuals, and potentially to her own daughter. (*See* ECF No. 237, ¶¶ 3–5). As such, the doctrine of promissory estoppel does not apply under New York law.

finds that Plaintiff's claim for promissory estoppel is similarly barred by the statute of frauds.

### E. Partial Performance

Plaintiff, however, argues that her partial performance of the oral agreement removes the bar of the statute of frauds. (Pl.'s Opp., at 4–6). Plaintiff's argument is misplaced for two reasons. First, under Florida law, "the doctrine of part performance does not remove the bar of the statute of frauds from actions for damages based upon the breach of oral contracts." *Hosp. Corp. of America v. Associates in Adolescent Psychiatry, S.C.*, 605 So. 2d 556, 558 (Fla. 4th DCA 1992); *Dwight v. Tobin*, 947 F.2d 455, 459 (11th Cir. 1991); *see also Harrington v. Murray*, 564 NY2d 738, 740 (1st Dept. 1991). With the exception of Plaintiff's claim for promissory estoppel, her action is one for damage based upon a breach of an oral contract that is barred by the statute of frauds. Therefore, the doctrine of part performance is inapplicable.

Second, Plaintiff's argument fails because there was no partial performance on her part. The alleged agreement was premised on Plaintiff's "absolute secrecy, silence, and confidentiality" as to Child X's paternity. (*See* Jane Doe Decl. ¶ 8, ECF No. 160-1; ECF No. 161-1). Yet, even construing all facts and drawing all reasonable inferences in Plaintiff's favor, as the Court must, the evidence overwhelmingly shows that she did not perform her obligations under the agreement. Plaintiff claims to have kept Child X's paternity a secret for at least 15 years. (Pl.'s Opp., at 6). Yet, she "unequivocally admitted to [] disclosing to her friend, Jeremy Wren, and eleven or more lawyers, the facts and circumstances of Defendant being the father of Child X." (Def.'s Reply, at 3, ECF No. 164; Jane Doe Depo., at 81:18, ECF No. 98-1). Indeed, as early as 2003, Plaintiff hired an attorney who represented her "with regard to securing [her] daughter's future." (Jane Doe Depo., at 83:5–12). This attorney, as well as many others hired by Plaintiff, engaged in conversations with Defendant's counsel, which involved discussions about Child X and the

financial support Plaintiff requested from him. (*See* Jane Doe Depo, at 83:13–21).

Assuming *arguendo* that Plaintiff's communications with her lawyers did not constitute a breach of her obligations because the conversations were protected by the attorney-client privilege, Plaintiff has also admitted to have discussed the matter with third parties. First, she discussed the circumstances of Child X's paternity with Steven Porter, a man who appears to have worked for Defendant. (Jane Doe Depo., at 28:13–23). In her words, Mr. Porter was "instrumental in everything that went on[,]" and she communicated with him since her daughter was an infant. (Jane Doe Depo., at 27:20–28:15). Then, she continued revealing the identity of Child X's father throughout Child X's lifetime while she negotiated with Defendant and his associates. Finally, in 2017, she revealed Defendant's identity to her friend, Jeremy Wren. (Jane Doe Depo, at 37:23–38:22). Plaintiff has unmistakably revealed the identity of Child X's father to at least 12 individuals, thus failing to perform her obligations under the alleged agreement. Her attempt to take this agreement out of purview of the statute of frauds, thus, fails.

### F. Unjust Enrichment[6]

Plaintiff's claim for unjust enrichment fares no better. Under Florida law, a claim for unjust enrichment has three elements: "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012). It is axiomatic that there must be a

---

[6] This claim also fails under New York law. An unjust enrichment claim is precluded when it seeks the same relief that is barred by the statute of frauds. *Komolov v. Segal*, 985 NYS2d 411, 411 (1st Dept. 2014); *Andrews v. Cerberus Partners*, 707 NYS2d 85 (1st Dept. 2000) (dismissing claim for unjust enrichment that was indistinguishable from breach of contract claim barred by statute of frauds). Here, Plaintiff seeks the same relief, *i.e.*, that he compensate her for her silence regarding his identity. Thus, this claim is also barred under New York law.

benefit conferred before unjust enrichment exists. *See Coffee Pot Plaza Partnership v. Arrow Air Conditioning and Refrigeration, Inc.*, 412 So. 2d 883, 884 (Fla. 2d DCA 1982).

Among his other arguments, Defendant asserts that "Plaintiff has not conferred any benefit upon Defendant."[7] (Mot. Summ. J., at 20). The Court agrees. As the Court has already found, Plaintiff failed to perform her obligation under the alleged contract that she would maintain the identity of Child X's father a secret. Plaintiff's contentions that she "has protected [Defendant's] family, business, and public image by keeping up her end of the agreement and staying silent[]" is without merit. (Pl.'s Opp., at 20). Not only did she disclose Defendant's identity to at least eleven attorneys, but she (and her attorneys) also disclosed his identity to third parties. Further, Plaintiff's argument that she raised Child X alone is unavailing. While Defendant does not appear to have been involved in child-rearing decisions (as is his prerogative to do so), he has financially provided for his daughter since she was born. Nevertheless, Plaintiff continuously involved Defendant in Child X's life by contacting him to demand more money for birthday parties and Christmases, among other reasons. (*See* Jane Doe Depo., at 55:16–21). Therefore, Plaintiff has not conferred a benefit upon defendant and her claim for unjust enrichment cannot survive summary judgment.

## IV. CONCLUSION

Accordingly, it is hereby:

**ORDERED AND ADJUDGED** that,

1. Defendant's Motion for Final Summary Judgment [ECF No. 151] is **GRANTED**.

2. Final Judgment shall be entered by separate order.

---

[7] Defendant also argues that the claim is barred because Plaintiff alleges the existence of a contract. Merely alleging the existence of a contract is not sufficient to bar a claim for unjust enrichment; the existence of a contract must be proven. *See Intercoastal Realty, Inc. v. Tracy*, 706 F. Supp. 2d 1325, 1331 (S.D. Fla. 2010). In light of the statute of frauds and other reasons stated herein, the Court does not find it necessary to rule on whether a contract in fact exist.

3.      This case is **CLOSED** for administrative purposes, and all pending motions and reports and recommendations are **DENIED as MOOT**.

DONE AND ORDERED in Chambers at Miami, Florida, this 10th day of November, 2020.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Otazo-Reyes
All Counsel of Record